## Guckavan *v.* Lehigh Traction Company, Appellant.

*Negligence—Damages—Personal injuries—Evidence.*

In an action against a street railway company to recover damages for personal injuries, the evidence is sufficient to sustain a finding by the jury that the injuries resulted from the accident, where two physicians and other witnesses testify that prior to the accident plaintiff was a healthy, able-bodied woman, but that after the accident she aged considerably, had a nervous tremor, had lost in weight, had heart failure, and that her sufferings would be permanent, and one of the physicians stated that she had progressive paralysis of the spinal cord, and that the trouble would constantly increase, and that a concussion or blow upon the spine was the cause of the trouble he described.

*Evidence—Witness—Cross-examination.*

Where in an accident case against a street railway company, a physician testifies that he had visited and examined the plaintiff, and on cross-examination admits that he had been sent by the company, but that he was not the company's physician, the plaintiff may show by further cross-examination that the witness had repeatedly, at the company's instance, and as its representative, gone to examine persons hurt in accidents on its road, and that he had been so employed from time to time by the company.

*Practice, C. P.— Trial—Objectionable remarks of counsel.*

Where objectionable remarks made by counsel to the jury are not brought upon the record by affidavit and exception, they cannot be considered by the Supreme Court.

Argued April 15, 1902.    Appeal, No. 385, Jan. T., 1901, by defendant, from judgment of C. P. Luzerne County, May T., 1898, No. 116, on verdict for plaintiff in case of William Guckavan and Maria Guckavan v. Lehigh Traction Company. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ.    Affirmed.

Trespass to recover damages for personal injuries.    Before Lynch, P. J.

At the trial it appeared that in August, 1897, plaintiff was a passenger on one of defendant's cars which was derailed. Plaintiff testified that she was thrown from the car and suffered injuries to her spine.    Several witnesses testified to the serious character of her injuries.    Dr. James MacKellar, a witness for the defendant, testified that he called upon her immediately

after the accident, and subsequently on other occasions, and discovered no injuries. On cross-examination he denied that he was the company's physician. He was asked this question:

" Q. How often have you been sent by the company to examine people who were injured by accident?"

Objected to.

" A. I can't tell."

Objection not sustained, exception noted and the bill sealed for defendant. [1]

" Q. How often have you been sent by the company to examine people who were in accident cases down in Hazleton by this company?"

Objected to. Objection not sustained, exception noted and bill sealed for defendant. [2]

" A. I don't know. Q. Give us some idea; you were sent in the Weir case."

Objected to. Objection not sustained, exceptions noted and bill sealed for defendant. [3]

" Q. You were here as a witness?"

Objected to. Objection overruled, exception noted and bill sealed for the defendant. [4]

" A. In the Weir case I was called, I believe, as a witness for the prosecution, because Mrs. Weir consulted me in my office—consulted me in conjunction with Dr. ———— . Q. What other cases have you been sent by the company in to examine people who were hurt in an accident?"

Objected to as immaterial and irrelevant.

The Court: You may ask how often.

Objected to. Objection overruled, question allowed, exception noted, and bill sealed for defendant. [5]

" A. I can't tell you. I have been sent to quite a number of accident cases. Q. By this company? A. By this company."

Defendant presented this point:

Under all the evidence the verdict must be for the defendant. *Answer :* The defendant has asked the court to charge you on certain matters of law. The court declines to affirm any of the points. [6]

Defendant's counsel moves to have a juror withdrawn and the jury discharged from the consideration of this case on the ground that plaintiff's counsel in his closing address to the

jury, against the protest of defendant's counsel, commented on the fact that the affidavit of Dr. Brundage as to what he would testify to was not offered; that he commented on the fact that plaintiffs were poor; that he stated, it has cropped out here in the evidence, that there were accidents after accidents on this road, and it was about time the public would be protected against this company.   *Answer:* The court declines to grant the motion. [7]

Verdict and judgments for plaintiff for $1,100 and $3,400, respectively.   Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions; (6) refusal of point; (7) refusal to withdraw a juror.

*John T. Lenahan,* for appellant, cited as to the cross-examination: Bratton v. Mitchell, 3 Pa. 44; Hill v. Meyers, 43 Pa. 170; Cummings v. City of Williamsport, 84 Pa. 472; Weidler v. Farmers' Bank of Lancaster, 11 S. & R. 134; First Nat. Bank of Carlisle v. Graham, 79 Pa. 106; Floyd v. Bovard, 6 W. & S. 75; 1 Rice on Evidence, sec. 586.

Cited as to the sufficiency of the evidence: Houston v. Traphagen, 47 N. J. L. 23.

Cited as to the remarks of counsel: Holden v. Penna. R. R. Co., 169 Pa. 1.

*James L. Lenahan,* with him *C. B. Lenahan,* for appellee, cited as to the remarks of counsel: Com. v. Weber, 36 W. N. C. 193; Holden v. Penna. R. R. Co., 169 Pa. 1.

Cited as to cross-examination: Helser v. McGrath, 52 Pa. 531; Osborne v. Walley, 8 Pa. Superior Ct. 193; Jessop v. Ivory, 158 Pa. 71.

OPINION BY MR. JUSTICE BROWN, October 13, 1902:

The refusal of the court below to affirm defendant's first point is the subject of the sixth assignment of error.   The reason given by the defendant for asking for binding instructions in its favor was, that the plaintiff had not shown that the injuries of which she complained had resulted from her fall from the car.   The plaintiff testified that, in the derailment of the car,

she was thrown from it, and the jury were fully justified in believing this statement. Prior to the accident she was a healthy woman—a healthy, able-bodied woman—but ever since, according to her own testimony and that of several witnesses, her condition has been distressing. One physician, who had known her for twenty-five years as "a strong, healthy, able-bodied woman," testified that, since she was thrown from the car, she had aged considerably, had a nervous tremor, had lost in weight and had heart failure. He further testified that, in his judgment, her sufferings would be permanent. Another physician, called as an expert, stated that the plaintiff had progressive paralysis of the spinal cord, was permanently disabled, that the trouble would constantly increase and that a concussion or blow upon the spine would be a cause of the troubles he described. It was, therefore, not for the court to say that no cause or connection had been shown between the accident and the injuries of which the plaintiff complained; but it was for the jury to determine whether the evidence showed, or tended to show, such connection, and the learned judge properly left it to them to say whether a reasonable inference could be drawn that the fall from the car was the actual cause of Mrs. Guckavan's changed and enfeebled condition.

The appellant complains of certain questions that were allowed to be put to its witness, Dr. MacKellar, on cross-examination. The examination in chief of this witness, which was hurtful to the plaintiff, would naturally have impressed the jury that, when he called to examine the plaintiff on the day of the accident, and continued to visit her ten or twelve times, he had done so either at her instance or by direction of some member of her family. It was not developed by the company that he had been promptly sent to see her by its direction; but on his cross-examination, this fact for the first time was properly brought out, and, when he stated that the company had sent him, he was further properly asked whether he was the company's physician, to which he answered that he was not. To affect his credibility, the questions complained of by the first, second, third, fourth and fifth assignments of error were then asked, and ought not to have been disallowed, for it was legitimate for the plaintiff to show, by cross-examination, that the witness, who had stated he was not the company's physician,

had repeatedly, at its instance, and as its representative, gone to examine persons hurt in accidents on its road ; and that he had been so employed from time to time by the company, was information properly drawn from the witness by the plaintiff for the consideration of the jury in determining what effect they ought to give to his testimony.

If it appeared from the record that counsel for appellees was guilty of the bad faith charged to him by the seventh assignment of error, we would unhesitatingly reverse this judgment. The record, however, does not only not disclose the misconduct complained of in connection with the affidavit of Abner Smith, but the charge is unqualifiedly denied by the accused. In Commonwealth v. Weber, 36 W. N. C. 193, and Holden v. Penna. R. R. Co., 169 Pa. 1, we have clearly indicated how objectionable remarks of counsel can be made part of the record brought up for review, and if, in this case, such remarks were made, counsel now complaining of them failed to do what he ought to have done when they were uttered. The assignments are all overruled and the judgment is affirmed.